ESTEVES *v*. DEL RIO ET AL.

APPEAL from the District Court of Arecibo.

No. 14.—Decided June 24. 1904.

RECORD OF ENTRY OF DEEDS.—Where a deed òf conveyance of the ownership or possession of real estate or property rights has been recorded, or cautionary notice has been entered in the registry of property, no record can be made or entered of any other deed or cautionary notice bearing the same or a prior date, whereby an incumbrance is placed upon or a conveyance is made of such real estate or property right.

OWNERSHIP — PROPERTY RIGHTS — POSSESSION — PRESCRIPTION — GOOD FAITH — PROPER TITLE.—The ownership and other real rights in real estate prescribe by possession for six years with respect both to persons present and absent, in good faith and under a proper title, and good faith is presumed in the absence of proof to the contrary.

PARTITION AND AWARD OF HEREDITARY PROPERTY—TITLE OF OWNERSHIP.—Until the partition and award of the property of the testator is made, the heirs cannot set up any exclusive title of ownership to the property or co-ownership which may pertain to each of them.

POSSESSION—OWNER.—Acts of possession performed or consented to by the person in possession of a thing which does not belong to him, as a mere holder thereof to enjoy or retain it in whatever capacity, do not bind or prejudice the owner, unless he has expressly empowered him to perforn such acts, or ratifies the same after they have been performed.

ID.—RIGHTS OF POSSESSORS OF PROPERTY.—Every possessor of property who is unlawfully deprived of his possession, or is disturbed therein, has a right to be reinstated or protected in such possession.

STATEMENT OF THE CASE.

This is an action prosecuted in the District Court of Arecibo by José Esteves Torres against Alonso del Rio y Diaz and Román Montano y Cruz to secure the annulment of proceedings brought to obtain a possessory title, the record thereof in the registry of property, and other acts arising therefrom. The case is pending before us on appeal in cassation, now ordinary appeal, taken by the plaintiff from the judgment rendered by the District Court of Arecibo, the appellant, José Esteves Torres, having been represented in this court by Attorney José de Guzman Benitez, and the

respondent, Alonso del Rio y Diaz, by Attorney Antonio Alvarez Nava. The other respondent, Román Montano Cruz, did not appear.

A literal copy of the said judgment reads as follows, to wit:

"Judgment 46.—In Arecibo, January 17, 1903: An oral and public hearing was had before this district court in the declaratory action prosecuted by José Esteves Torres, married, of legal age, a manufacturer of fireworks, and a resident of San Juan, represented by Attorney José de Guzmán Benítez, against Alonso del Río y Díaz and Román Montano y Cruz, of legal age and residents of Morovis and Vega Baja, respectively, the former represented by Attorney Simón Large y Aquilue, and the latter, that is to say, Montano, by Attorney Antonio Alvarez Nava, to secure the annulment of proceedings brought to obtain a possessory title, the record thereof, and other acts arising therefrom.

"Attorney José de Guzmán Benítez, on behalf of José Esteves Torres, on March 24th of last year, filed in this court a complaint in a declaratory action against Alonso del Rio Diaz and Román Montano y Cruz, alleging the following facts, to wit: That Antonio Abad Colón, formerly a resident of Morovis, was for thirty years the sole owner of a rural estate situated in *barrio* Unibón of the municipality of Morovis, with an area of 53 *cuerdas,* more or less, equivalent to 20 hectares, 82 ares and 30 centares, bounded on the north by lands belonging to Francisco Miranda; on the east by lands of Juana Meléndez and Isidro Vega, who acquired the same from Emilio Hurtado, and now the property of Rodrigo del Río, formerly owned by Juana Meléndez; on the south by lands of Alejandro Arce, the river Piñas dividing the two properties, and now Delfín or Pedro Rivera owns the lands formerly owned by Alejandro Arce, the former having purchased the same from the latter, who likewise acquired it by purchase from Angel Berrios; on the west by the river Carreras, which separates the land here described from the lands now belonging to Cándido Corrada, acquired by purchase from Antonio Goicouría, to Ramón Figueroa by purchase from Amalia Rodríguez, and other lands which as heretofore continue to belong to the Estate of Juan María Colón. That upon the death of Antonio Abad Colón the real estate described was inherited by his legitimate children, Rosalía, Sinesia, Toribio and Rafael Colón y Rodríguez, and Rosalía and Paula Colón y Santiago, the same belonging to them in common, and an undivided one-sixth interest to each,

the title of ownership thereof remaining intact and being recorded in
the Registry of Property of Arecibo as an inheritance. That the sis-
ters Rosalía and Sinesia, and their brothers Toribio and Rafael Colón
y Rodríguez sold their interests to Graciano Archilla y Ramos by deed
executed in Vega Baja before the notary public, José Felix Lajara, on
August 26, 1894, which deed was recorded in the Registry of Prop-
erty of Arecibo on the reverse side of folio 23 of volume 7 of Morovis,
estate No. 340, 4th record. That Graciano Archilla y Ramos sold the
said four-sixths interest in the said property to Camilo Taboas y Gan-
dara, by deed executed December 17, 1894, in Manatí before Notary
José Felix Lajara, and the same was recorded in the Registry of
Property of Arecibo on folio 24 of volume 7 of Morovis, estate No.
340, 5th record. That Camilo Taboas y Gándara sold the said four-
sixths interest to José Esteves Torres by deed executed December 28,
1901, before Notary Rafael Palacios Rodríguez, of San Juan, and the
said deed was recorded in the same registry of property on folio 24
of volume 7 of Morovis, estate No. 340, 6th record. That in this con-
dition the facts became known to Esteves by means of the publication,
in No. 47 of the newspaper "La Gaceta de Puerto Rico," in its issue
of February 26, last, of a notice issued by the municipal judge of
Morovis in which appears the claim of Alonso del Río seeking to have
changed to a dominion title the possessory title recorded in his favor
on folio 186 of volume 3 of Morovis, of an estate numbered 138, which
appears to be the same property described in the first allegation of
this complaint, except for fortuitous differences with respect to the
acreage and the names of the adjoining land owners, some of which
appear to be different by reason of the conveyances of title made by
some of the former owners of the adjoining lands, as is shown by the
description of said estate contained in the notice above mentioned,
which is as follows: 'An estate without name, situated in *barrio*
Unibón, within the municipal jurisdiction of Morovis, consisting of
61 *cuerdas,* which is equivalent to 23 hectares, 97 ares and 53 centares
of third-class land, with pasture grass, wood and brush growing
thereon, as also some coffee; bounded on the east by lands belonging
to the estate of María Berríos y Ocasio, represented by her son, Emilio
Hurtado y Berríos; on the north by lands of Francisco Miranda
Rivera; on the west by the lands of Antonio Goicuria y Matos, Amalia
Rodríguez Archilla, and the estate of Juan María Colón, represented
by the widow Concepción Rivas y Rivas; and on the south by lands
of Juana Meléndez y Díaz and Angel Berríos y Rodríguez.' That
the said notice having just come to the attention of his client, and the

fifteen days fixed therein during which opposition could be made to the demands or claims of Alonso del Río, Esteves Torres has been unable to file the proper complaint in opposition in the municipal court of Morovis and has proceeded with the greatest haste to file this complaint, availing himself of such data as he could secure in the brief time at his disposal. That from the data obtained by his client it appears that, notwithstanding the fact that the said estate is in the quiet, peaceable, and uninterrupted possession and ownership of Antonio Abad Colón and his children, who inherited it, Román Montano Cruz, a resident of Morovis, commenced proceedings to obtain a possessory title to the said real estate, 61 *cuerdas* being stated as the area embraced within the boundaries mentioned in the seventh allegation of this complaint, ascribing to himself the character of owner of the said property and stating that the same was acquired by purchase from Alonso del Rio y Diaz without a written title; which proceeding had before the municipal court of Morovis resulted in an order made on August 1, 1888, granting the application for a possessory title, and the same was recorded in the Registry of Property of Arecibo on folio 185 of volume 3 of Morovis, estate No. 138, 1st record, after which Román Montano y Cruz sold to the said Alonso del Rio y Diaz the property described, by deed executed before Notary Francisco Náter y Rivera, in Manatí, on October 16, 1891, which was recorded in the registry of property on folio 186 of the same volume and estate, 2d record. This property appears to have been valued for the purposes of that sale at 1,400 *pesos* of the money in circulation at the time of the contract. Esteves Torres is at the present time in possession of this property by virtue of his title of purchase and sale, by a demand made before the municipal court of the San Francisco district upon Emilio Torres Saez to abandon the possession of the property maliciously given him by Alonso del Rio y Diaz pretending to be the owner thereof, with power to execute a deed conveying the absolute ownership of the same, and that neither Román Montano nor Alonso del Rio have ever been in possession of the property in question as owners, either in the legal sense of the word or otherwise. As legal grounds counsel cited articles 348, 609, 1445, 1537, 1940, 438, 462, 445, 1941, 1950, 1953, 1954, 1949, and 4 of the Civil Code; articles 390, 394, 391, 392, 393, 17, 29, 77 and 79 of the Mortgage Law, and finally prayed that the property the possession of which Román Montano y Cruz had recorded in his name in the Registry of Property of Arecibo, by means of the proceedings to acquire a possessory title prosecuted in the municipal court of Morovis and granted by an order

made in August of the year 1898, which was recorded on folio 185 of
volume 3 of Morovis, estate No. 138, 1st record, sold by Montano to
Alonso del Rio by deed executed October 16, 1891, and recorded at
folio 186 of the same volume and registry and under the same estate
number, 2d record, be declared by this court to be the same property
the ownership of which originally belonged exclusively to Antonio
Abad Colón, from whom it was inherited by his legitimate children,
Rosalía, Sinesia, Toribio, and Rafael Colón y Rodríguez, and Rosalía
and Paula Colón y Santiago, one-sixth to each in common, and after
several conveyances finally became the property of José Esteves Tor-
res; that the proceedings to secure a possessory title are null and void,
and therefore all other acts done in consequence thereof; and that the
records of possessory title and the succeeding records of dominion title
by conversion be in turn cancelled by reason of their nullity and that
the defendant opposing the same be adjudged to pay the costs.    By
an additional or further prayer he requested that a notice of the suit
be entered in the registry of property and added as legal grounds
articles 33 and 34 of the Mortgage Law.

Together with the complaint plaintiff filed the deed of purchase
and sale of the estate involved in this action, executed in San Juan on
December 28, 1901, before Notary Rafael Palacios, by Camilo Taboas
Gándara, in favor of José Esteves Torres, and recorded on January
2, 1902, in the registry of property of this distict on the reverse side
of folio 24 of volume 7 of Morovis, estate No. 340, 6th record, as also
a copy of the *Gazette* numbered 47 and dated February 26, in which
was published the notice of Alonso del Rio's application for the con-
version into a dominion title the possessory title to the aforesaid estate.
Notice of this complaint was entered in the registry of property, and
after the proceedings to secure a conciliation were had notice thereof
was served upon the defendants, Alonso del Rio y Diaz and Román
Montano y Cruz, by delivery thereof to them for the period pro-
vided for by law.

Attorney Antonio Alvarez Nava, on behalf of Román Montano y
Cruz, answered the complaint, setting forth the following facts: That
his client purchased from Alonso del Rio the estate referred to in the
complaint for the sum of 850 *pesos,* provincial money.    That, there-
fore, according to an agreement with the vendor, he commenced
proceedings to obtain a possessory title to the estate acquired.    That
upon the institution of said proceedings he alleged the same acreage
and boundaries of the property as were set forth in the deed of pur-
chase and sale.    That upon acquiring the property from Alonso del

Rio he believed in good faith, as he now continues so to believe, that the vendor was the legitimate owner of the same, and there was no reason to think that the title contained any defect which would invalidate it: and that subsequently he in turn sold the property to Alonso del Rio, from whom he had acquired it. After citing as legal grounds articles 348, 1461, and 1474 of the Civil Code, he finally prayed that the complaint be dismissed with respect to his client and that the same be declared defective and impertinent, with costs against the plaintiff.

The other defendant, Alonso del Rio y Diaz, through his counsel, Simón Largé y Aquilue, also answered the complaint, setting up the following facts: That by public deed executed in Morovis on April 15, 1861, before the *alcalde* and notarial officer, Lucas Vega de Alicea, Victoriano Muñiz sold to Antonio Abad Colón 53 *cuerdas* of land situated in *barrio* Unibón of that municipality, bounded at that time on the east and north by lands of Manuel Colón Olivera; on the south by lands of Alejandro Arce; and on the west by those of Nicolás Santini and Joaquín Muñoz, for the sum of 650 *pesos*, payable as follows: 100 *pesos* in fifteen days in work cattle, at 15 *reales* per *arroba;* and the balance amounting to 550 *pesos*, 100 *pesos* each year counting from the date of the execution of the deed, half in silver and half in cattle; the vendor, Muñiz binding himself to confirm the execution of the deed as soon as the price should be entirely paid. That by public deed executed in Morovis on April 10, 1877, before Notary Francisco Tomás, by the vendor himself, Victoriano Muñiz, and Amalia Rodríguez, widow of the purchaser, Antonio Abad Colón, after making reference to the sale of the 53 *cuerdas* which was made to Abad Colón on April 15, 1861, they stipulated; that on the death of Abad Colón 270 *pesos* of the price of the land sold were still owing, and that it being impossible for his widow to pay the same, Juan María Colón agreed to pay the amount, provided a deed were given to him for 22 *cuerdas,* Juan María Colón delivering to Muñiz the said 270 *pesos*, and Muñiz issued a receipt for the total amount of the purchase price and ratified the sale in favor of Amalia Rodríguez and her legitimate children procreated with Antonio Abad Colón, the said Doña Amalia binding herself to execute a deed for 22 *cuerdas* in favor of Juan María Colón. That by public deed executed in Morovis on May 10, 1878, before Notary Francisco Tomás, Amalia Rodríguez conveyed to Juan María Colón the ownership of the 22 *cuerdas* of land, which was a part of the 53 *cuerdas* acquired from Victoriano Muñiz, in compliance with the stipulations contained in the deed

above mentioned, of which 22 *cuerdas* the purchaser Colón was placed in possession. That by another public deed executed on the same date and before the same notary, Tomás, Amalia Rodríguez sold to the said Juan María Colón, 18 *cuerdas* more out of the original 53 *cuerdas* acquired by purchase from Victoriano Muñiz, for the price which was acknowledged to have been received of 156 *pesos,* which, according to the deed, she used for the payment of the debts of the community; the remaining 13 *cuerdas* being. set aside for her minor children named Rafael, Pablo, Toribia, Rosalía and Sinesia, in payment of what is due them by ·inheritance from their father, the said Colón being put in possession of the said 18 *cuerdas* of land. That by public deed executed in Morovis on July 4, 1879, before Notary Francisco Tomás, the said Amalía Rodríguez sold to Juan María Colón the remaining 13 *cuerdas* of the 53 acquired from Muñiz, for the price of 120 *pesos,* which she acknowledged to have received, the said Doña Amalia adding in the deed: 'And in order that matters may be clear at all times, it is further stated that of the small amount of property left by Antonio Abad Colón, upon his death, after the debts were paid there remained 13 *cuerdas* of land which she set aside as the private property of her children and as their legal portion from their father; and in order that this might not be without effect, she binds herself to leave them the 13 *cuerdas* out of the 44 *cuerdas* which in addition she owns in *barrio* Montes Llanos of this municipal district, which land is her exclusive property; 9 *cuerdas* of this tract she acquired by inheritance from her deceased parents, and the balance by different purchases made from her brother; so that upon the assumption that her said children should claim their inheritance left them by their father, they may demand their rights and their property will be delivered to them out of the lands last mentioned, by which the same is hereby secured; and if at any time the present purchaser should require it, the relator hereby binds herself to give a bond in due form,' Colón being placed in the possession of the 13 *cuerdas* last purchased from Amalia Rodríguez. That as appears from the foregoing facts Juan María Colón became the owner of the 53 *cuerdas* of land conveyed by the deed executed in favor of Antonio Abad Colón by Victoriano Muñiz on April 15, 1861; and this same tract of 53 *cuerdas,* together with 8 *cuerdas* more adjoining the same on the north, making a total of 61 *cuerdas,* were sold by Colón to Alonso del Rio by private document executed January 28, 1886, for the sum of 600 *pesos,* 400 *pesos* of which the vendor acknowledged receipt; and the purchaser àgreed to pay the balance·amounting to 200 *pesos* in January, 1887;

and the vendor likewise agreed to execute the deed of conveyance to the land, the purchaser Rio being placed in possession of the same. That on March 7, 1886, Juan María Colón y Rosado made acknowledgment in the presence of his wife, María Concepción Rivas, and in the presence of witnesses, to the effect that he had received from Alonso del Rio the balance of 200 *pesos* on the purchase price of the 61 *cuerdas* of land to which reference is made in the foregoing allegation; and that a public deed of said sale was not executed because the notary public was not in the town of Morovis, the vendor agreeing to execute the deed as soon as possible; and in case of his death before the execution thereof, that his said wife and children would do so. That in 1887 Alonso del Rio sold to Román Montano the 61 *cuerdas* of land purchased from Juan María Colón, and he took possession of the same; and not having a recordable title thereto, Montano proved his possession in a proceeding prosecuted in the municipal court of Morovis to secure a possessory title, which was granted on August 1, 1888, and recorded on folio 185 of volume 3 of the said municipality, on October 11, 1888, estate No. 138, 1st record. That in 1888 Román Montano sold to Rafael Colón the estate consisting of 61 *cuerdas* hereinbefore described for the price of 1,400 *pesos,* of which price the purchaser paid a part, 700 *pesos* of the last instalment remaining unpaid, and Montano agreed to execute the deed upon the payment of that sum, which fact was made to appear by Colón in a declaratory public instrument which he executed on June 12, 1895, before Notary Casimiro Morales, of Cayey. That in March, 1890, Rafael Colón Rodríguez sold to Emilio Torres the said 61 *cuerdas* of land for the price of 4000 *pesos,* which Torres agreed to pay in the following instalments: 500 *pesos* which he paid at the time; 700 *pesos* as the first instalment, in March, 1901, 700 *pesos* in the month of March of each of the years 1892 to 1895, inclusive, and the last instalment of 400 *pesos* in the same month of the year 1896. That Emilio Torres took possession of the property in March, 1890, and not having sufficient funds to pay the said instalments he agreed with Alonso del Rio that the latter should pay the said instalments in his name; and that Montano should execute in favor of Alonso the deed of conveyance of the property, and at the same time del Rio agreed to convey the title to Torres as soon as he should have paid the amount which he might have advanced on the price of the said estate. That in March, 1891, Alonso del Rio paid to Rafael Colón Rodríguez 700 *pesos* as the first instalment on the purchase price, and the latter issued a receipt showing such payment to have been made by the former. That on July 19, 1892, del Rio paid

to Colón the total amount of the instalments remaining due to Emilio Torres on the price of the property, amounting to 2,800 *pesos,* a proper receipt being issued therefor. That Alonso del Rio also paid to Román Montano the 700 *pesos* which remained owing him by Rafael Colón upon the last instalment of the price of the property. That by reason of the payment made by Alonso del Rio to Román Montano, by virtue of the payment made to Rafael Rodríguez, and by reason of the stipulations made by the holder of the property, Emilio Torres, all agreed that the deed of conveyance of the said real estate should be made directly by Román Montano to Alonso del Rio; and this was done on October 16, 1891, before Notary Francisco Y. Náter y Rivera, of Manatí. That Emilio Torres, who has for 12 years enjoyed the usufruct of the 61 *cuerdas* paid for by Alonso del Rio, owed him on October 15, 1900, and still owes him, $2,621.86, and in addition to that the sum of $109.14 as commission on the transaction and for other matters, as acknowledged by him in instrument No. 12; and in order to avoid the payment thereof, and to continue gratuitiously to enjoy the products of the property, he has availed himself of every recourse, even to conspiring with the plaintiff, José Esteves Torres, and to abandon the possession of the property which he held in the name of Alonso del Rio, by virtue of a demand made before the municipal court of the San Francisco district in San Juan. That the taxes imposed by the Insular Treasury and by the municipalty upon the property involved in this litgation, since the year 1878, have been distributed and paid by Juan María Colón, Alonso del Rio, Román Montano, Rafael Colón and Emilio Torres, each during the time of his possession of the property. That the time fixed by law for the conversion of possessory titles into dominion titles having more than expired, Alonso del Rio commenced and prosecuted proceedings in the municipal court of Morovis to convert his possessory title to the 61 *cuerdas* of land aforesaid into a dominion title; and having duly shown by a certificate of the registrar of property that prescription had not been interrupted either by natural or civil causes, after having complied with the other requirements of the law, and no one having presented any adverse claim, the municipal judge caused said facts to be made to appear on the record and declared the proceedings closed by a decision rendered on March 15, last, and ordered that a certified copy of the same be issued for presentation at the registry of property in order that a marginal note of the conversion may be requested. As legal authority he cited articles 1256, 1218, 1278, 1261, 430, 1275, 1305, 432, 444, 463, 446, 445, 1473, 1930, 931, 1932, 1940, 1950, 1952, 1957, 1960, 1949 and 1963 of the

Civil Code; and articles 390, 20, 393, 17, 33, 23, 34, 35 and 389 of the Mortgage Law; and article 435 of the Regulations for the execution of the Mortgage Law; as well as Royal Order of August 28, 1883; and decisions of the General Directorate of September 12, 1883, April 4, and December 17, 1885, March 19, 1886 and March 18, 1877. And he finally prayed that final judgment be rendered dismissing the complaint and in due time declaring the conveyances made of the 61 *cuerdas* of land by Juan María Colón to Alonso del Rio, and by him to Román Montano, and by Montano to del Rio, valid and subsistent, as also the proceedings to obtain a possessory title prosecuted by Montano, and the deed of sale of the same to del Rio, and the records entered in the registry of property of the said proceedings, and of the deed; and that Alonso del Rio be maintained in the possession of the property in litigation, and that he be ordered to be restored to such possession; and that the entry of the cautionary notice ordered to be made of the complaint filed by José Esteves Torres be cancelled; and that the costs of the suit be taxed against the said Esteves Torres, reserving the right to Alonso del Rio to bring suit for damages and to prosecute such actions as he might be entitled to prosecute against those persons who have attempted to dispossess him of the ownership and possession of the real estate.

''The defendant Alonso del Rio attached to his answer to the complaint the deeds, documents and receipts referring to the sales made of the property and to which reference is made in the allegations of fact contained in the answer, and the parties having been cited to appear for the proposal of evidence, this step in the proceedings took place on the 12th day of July, last, the counsel for the plaintiff and the defendant Alonso del Rio only being present; and they presented in writing statements of the evidence of every character of which they intended to avail themselves; and a day was set for the beginning of the oral trial.

''As evidence proposed by the plaintiff, and which was declared relevant by this court, defendants Alonso del Rio and Román Montano testified in reply to questions propounded by the plaintiff. As documentary evidence mention was made of the documents attached to the complaint, as well as those presented under numbers 1—17 by the defendant Alonso del Rio in answering the complaint; that is to say, public deed of sale executed in Morovis on April 15, 1862, by Victoriano Muñiz in favor of Antonio Abad Colón; and the certificate issued by the Registrar of Property of Arecibo comprising the record of the property sold under said title and numbered 340, folio 22 of

volume 7 of Morovis; as well as the subsequent records of dominion titles to the aforesaid property, and by virtue of which conveyances the property is at the present time recorded under title of full owner-ship and in common in favor of José Esteves Torres, and of the minor grandchildren of Antonio Abad Colón, named Rosalía and Paula Colón y Santiago, who acquired their interests by virtue of intestate inheritance. In addition use is made of the favorable portions of the answer to the complaint filed by Alonso del Rio, in which the allega-tion as to the identity of the property is admitted, although it is stated therein that 8 *cuerdas* more were added to it upon the northern boundary; and attached a certificate issued by the secretary of the municipal court of San Francisco district in regard to the demand to vacate the property made by José Esteves Torers upon the former possessor, Emilio Torres, on March 20, last. And there was attached to the record a report of the Treasurer of Porto Rico, showing that the name of José Esteves Torres, as owner of the property in question, had been dropped from the rolls; as well as a certificate of the pro-ceedings to secure a conciliation between Emilio Torres and Rafael Colón held June 12, 1896, before the municipal court of Vega Alta.

"As evidence also proposed by the defendant Alson del Rio, and declared relevant by the court, Román Montano testified at the oral trial in reply to questions propounded by the said defendant. He reproduced documents numbered 1 to 18 filed together with the answer to the complaint, and the signatures to the private document, the authors of which had died in the meantime, were compared; also public deeds numbered 3, 4 and 5 which were presented by the defend-ant del Rio and attached by the counsel for plaintiff, as well as private documents numbered 6, 7, 11, 12 and 13. A certificate issued by the office of the mayor of Morovis was attached to the record, the said certificate showing the names of the persons appearing on the rolls from the year 1886 to 1887 as paying taxes upon the property in litigation; Antonio Rivas, Antonio Colón Rivas, José Felícismo Mu-ñiz, Angel Eustaquio Berrios and Román Martínez Torres testified as witnesses at the oral trial held on the fifth day of the present month, Attorneys José de Guzmán Benítez and Simón Largé being present at the same.

"After the evidence was all in counsel for the parties addressed the court and made their arguments in support of the contentions of their respective clients, and upon the termination of which yesterday was set for voting upon the judgment, which was rendered in open court by unanimous vote of the judges.

"In the conduct of the proceedings in this suit all the requirements of the law have been complied with, substitute Judge Elpidio de los Santos Laguardia having prepared the opinion of the court.

"The question for decision in this case reduces itself to a determination, from the result of the evidence introduced, to the following: First. Which of the two parties to the litigation should be considered as the one in possession of the right of full ownership of the 61 *cuerdas* in dispute; and second, which one of the prior and contemporary acts performed by both parties and their respective vendors, should be considered as real acts of tenancy and possession by the parties of the 61 *cuerdas* enjoyed as owner thereof, which could serve as a title for the acquisition of the ownership of the same.

In regard to the laws in force in this Island prior to the promulgation of the modified Civil Code and of the Mortgage Law and the Regulations for the execution thereof, the provision of Law VI, Title V, *Partida* V, and the concordant Law XIV, Title XII, book X of the *Novísima Recopilación,* in reference to the rule that the purchase and sale of real estate should be consummated by means of a public deed; from which it would follow that the 61 *cuerdas* acquired by Juan María Colón from Amalia Rodríguez in three parcels, the first of 22 *cuerdas* in payment of the price of the 53 *cuerdas*, supplied by Colón and received by Muñiz, according to public deed of May 10, 1878; 18 *cuerdas* on the same day and year, and the remaining 13 *cuerdas* on July 4, 1879, being the balance of the 53 *cuerdas* to which the deed of April 15, 1861, makes reference, from Muñiz to Antonio Abad Colón, for which the price agreed upon was paid, the same being grouped with 8 *cuerdas* more adjoining on the north, making in all the 61 *cuerdas* aforesaid, were sold by Juan María Colón to Alonso del Rio by private document executed on January 22, 1886, for the sum of 600 *pesos*, which del Rio paid in two instalments of 400 and 200 *pesos*, respectively, del Rio remaining from that date in possession of the 61 *cuerdas* of land sold by del Rio to Román Montano in 1887. The said Montano, having no written title, commenced proceedings to obtain a possessory title to the 61 *cuerdas* of land before the municipal judge of Morovis, which was granted in August, 1888, and recorded in the registry of property on folio 185 of volume 3 of the municipality of Morovis on October 11, 1888, 1st record. So it is evident that at the present time Alonso del Rio represents the judicial personality of Juan María Colón, with respect to the ownership of the 61 *cuerdas,* notwithstanding the present possession thereof by Esteves by virtue of the demand made upon Emilio Torres, because the latter

was in possession under title of ownership by purchase on instalments not fully paid, which purchase he had made from del Rio in 1890.

"The acts performed by the heirs of Antonio Abad Colón and his widow, Amalia Rodríguez, as the originators of the subsequent records of dominion title caused to be entered by Graciano Archilla, Camilo Taboas, and José Esteves Torres cannot be considered as a real acquisition of ownership, which on account of having been duly and legally conveyed under the practice then in force, they no longer possessed. It further appears that Amalia Rodríguez, in the deed elucidating and confirming the deed of 1861, and which she failed to present at the registry of property, upon requesting the admission of the first deed to record, the hereditary rights of her children were made to appear as prior to the sale to Muñiz; to the effect that the balance of 13 *cuerdas* left after paying Juan María Colón by transferring to him the 22 *cuerdas* in lieu of the balance due upon the price to be paid by Muñiz, and of the 18 *cuerdas* sold to the said Muñiz, with the proceeds of which to pay the debts contracted upon the death of Antonio Abad Colón (the remaining 13 *cuerdas* referred to being the small property left upon the death of the said Antonio Abad Colón), were set aside as the private property of the heirs, as their legal portion from their father; and in order that this act might not be without effect, she bound herself to leave them their share out of 44 *cuerdas* of land which she said she owned, in addition, in *barrio* Montes Llanos, of Morovis; all of which shows a real and legal conveyance of the ownership of the 53 *cuerdas* to Juan María Colón, who was furthermore placed in possession of the same, as well as the subsequent purchasers of the said land, to which were added the said 8 *cuerdas* more which do not appear ever to have been the property of Antonio Abad Colón.

"In accordance with Laws 50 and 51 of Title V, *Partida* V, the sale of a thing made at two different times, where the first purchaser has taken possession and paid the price thereof, acquires the ownership of the same, the second purchaser being entitled to demand reimbursement of the price paid and indemnity for any losses or damages occasioned thereby. And likewise, where a thing is sold which does not belong to the vendor thereof, and the purchaser is placed in possession of the same, if the vendor afterwards acquires the ownership of the thing, either by gift or legacy from the owner, and sells it to another person, it will belong to the first purchaser. Therefore, it appearing from all of the evidence introduced that Amalia Rodríguez sold to Juan María Colón the 53 *cuerdas*, in her capacity as widow and the legitimate mother of her minor children, she bound herself

to secure to the said children their inheritance from their father, after the payment of the debts which were pending in the manner appearing from the record, it is evident that even without the necessity of prescription appearing, as it does appear, with respect to the ownership of the 61 *cuerdas,* for the purposes of the admission of the title of ownership to record in the registry of property, and all the land forming a part of the 53 *cuerdas* aforesaid, the ownership thereof was acquired and conveyed by Juan María Colón, under the protection of the laws then in force, and it is under this title that Alonso del Rio claims ownership to-day.

''With respect to the laws now in force, the judicial order of April 4, 1899, having modified article 1957 of the former Civil Code with respect to the provision that ownership and other property rights in real propety shall prescribe by possession for six years both as to persons present and absent, in good faith and with a proper title; and it is evident that Alonso del Rio, either personally or by the different conveyances made of the realty by Juan María Colón to del Rio, by del Rio to Montano, and by Montano to him; and other acts of ownership and possession performed by del Rio upon the said 61 *cuerdas* of land ever since he acquired the same by purchase in the year 1886, by virtue of the payment of the purchase price of 600 *pesos* of the money then in circulation, paid in two instalments, it is obvious that even upon the hypothesis of the absence of the precedent established by the acts performed during the time in which the former laws were in force here and comprised within the provisions thereof and which give to the predecessor in interest, Alonso del Rio, the ownership and dominion of the thing purchased by him, it is obvious that even according to the provisions of the laws now in force and contained in the amended article of the Civil Code above cited, and in the Mortgage Law, and the Regulations for the execution thereof, in regard to the commencement and termination of proceedings to secure the conversion of a possessory title into a dominion title, and the admission of the same to record, Alonso del Rio has acquired by prescription the ownership of the said 61 *cuerdas* of land, in accordance with the laws now in force; and therefore all acts performed in regard to the said real estate which are in opposition to, or render impossible the exercise of, his rights of ownership by Alonso del Rio, are null and void.

''The admission to record of instruments which are null and void according to law does not render the same valid; and, therefore, it appearing from the evidence introduced that in accordance with the

old laws and the laws now in force the ownership of the said 61 *cuerdas* is vested in Alonso del Rio; and it is evident that the record of the title of ownership caused to be made in the year 1894 by the predecessors in interest of Esteves, none of whom has been in possession, or had the ownership of the thing until the beginning of last year, Emilio Torres, the purchaser of the said lands and the debtor of Alonso del Rio and the possessor of the said real estate for more than twelve years, consented to Esteves taking possession of the same in the manner and under the conditions which appear in the record.

"In view of the fact that Article VII of the Judicial Order of April 4, 1899, above cited, gives a retroactive effect to its provisions, it is evident that if in the year 1894, on the dates upon which the records caused to be entered by the predecessors in interest of Esteves, the six years required for prescription had expired, the acts performed with the object of effecting the entry of such records are null and void; inasmuch as by the said order, taken in connection with said amended article of the Civil Code and the provisions of the Mortgage Law and the Regulations for the execution thereof, Alonso del Rio had already, by operation of law, acquired the ownership of the 61 *cuerdas* aforesaid, possessory title of which appears to have been on record in the registry of property ever since August 1, 1888, and the conversion of which into a dominion title has been effected by proceedings prosecuted for the purpose of securing the same, without any opposition having been made by any one within the time prescribed by law, for which reason [the fact that] the conversion of the possessory title into a dominion title is now pending the proper entry in the registry of property, does not prevent the decision of the municipal court from subsisting pending compliance for the purposes of the proceedings to secure the conversion of the possessory title into a dominion title, which came to a conclusion without opposition by any one, on account of the effects of this suit, since the effects of the said dominion title should be retroactive with respect to the date of the admission to record the possessory title.

"According to article 33 of the Mortgage Law, the admission of an instrument to record does not render valid, acts or contracts which are null and void according to law; from which it is clear that the ownership of a thing having been acquired in the manner and under the conditions that the real estate involved in this litigation appears from the record herein to have been acquired by Juan María Colón, according to the former laws in force, and by his successors in the possession and ownership of the said real estate by purchase thereof and the pay-

ment of the price, any other act or contract subsequent thereto or contemporaneous therewith, and by which either directly or indirectly the said right of ownership is transferred or prejudiced is null and void.

"According to article 35 of the Mortgage Law above cited in connection with the Judicial Order which amends the law in regard to prescription, prescription shall commence to run from the date of the entry on record of the possessory title.

"Costs should be imposed when the demands of the parties are in all things denied, but there should be no special imposition of costs in case there is only a modification thereof.

"In view of the provisions of Law VI, Title V, *Partida* V, and the concordant Law XIV, Title XII, Book X of the *Novísima Recopilación,* 50 and 51, Title V of *Partida* V, article 1957 of the former Civil Code, and Judicial Order amending the said article, and article 393 of the Mortgage Law, as well as articles 33 and 35 of the said Mortgage Law, we adjudge that we should dismiss and do dismiss the complaint filed by José Esteves Torres against Alonso del Rio and Román Montano y Cruz. And we hold to be valid and subsistent the conveyances made of the 61 *cuerdas* of land by Juan María Colón to Alonso del Rio and by said del Rio to Román Montano and by Montano to del Rio; as also the proceedings to secure a possessory title, without special imposition of costs; reserving to José Esteves Torres the right to demand indemnity for damages and losses from Amalia Rodríguez or her Estate. Alonso del Río is hereby ordered to be placed in possession of the property, and the cautionary notice of this suit entered in favor of José Esteves Torres is ordered to be cancelled, and the indemnity for damages and losses demanded by the defendant are hereby denied. Thus by this our judgment do we finally pronounce, command and sign."

From the foregoing judgment counsel for José Esteves Torres took an appeal in cassation for error of law, which was allowed, and the record having been sent up to this Supreme Court, after citing and summoning the parties to appear, the said appeal was conducted as an ordinary appeal, in accordance with the provisions of the law of March 12 of last year converting this Supreme Court into a court of appeals, a day being set for the hearing which was duly held, counsel for José Esteves Torres and Alonso del Rio y Diaz being present at the same.

*Mr. José de Guzmán Benitez,* for appellant.

*Mr. Alvarez Nava,* for respondent.

The other respondent did not appear.

MR. JUSTICE HERNÁNDEZ, after stating the foregoing facts, delivered the opinion of the court.

We accept substantially all the findings of fact contained in the judgment appealed from.

The proceedings brought by Román Montano Cruz to obtain a possessory title to the 61 *cuerdas* of land which he acquired by purchase from Alonso del Rio, and which he afterwards sold to the latter by public deed executed October 16, 1891, was sustained by the municipal court of Morovis on August 1, 1888, and the title therein granted was recorded in the Registry of Property of Arecibo under date of October 11, 1888, there being no prior record in the said registry relating to the said property or any part of the same, since the deed executed April 15, 1862, whereby Victoriano Muñiz sold to Antonio Abad Colón 53 *cuerdas* of land the ownership of which is now claimed by the plaintiff, José Esteves Torres, was recorded in the same registry under date of April 16, 1894.

According to article 17 of the Mortgage Law, where any deed of conveyance of the ownership or possession of real estate or property rights in the same has been recorded, or cautionary notice has been entered in the registry of property, no record can be made or entered of any other deed or cautionary notice bearing the same or a prior date, and whereby an incumbrance is placed upon, or a conveyance is made of such real estate or property right; and therefore the records of the 53 *cuerdas* of land having been entered upon the Registry of Property of Arecibo, the first in favor of Antonio Abad Colón on April 16, 1894, and afterwards in favor of his estate; and thereafter successively in favor of Graciano Archilla, Camilo Tábóas and José Esteves Torres, as co-owners of the said estate in aliquot parts, when the possessory title to the 61 *cuerdas* of land of which the 53 *cuerdas* above mentioned

formed a part, was already recorded on a prior date in favor of Román Montano originally, and subsequently in favor of Alonso del Rio, by virtue of a deed of purchase, from October 11, 1888, and November 26, 1891, successively, there is no doubt that those records, made contrary to law, can have no legal effect as against Montano and Alonso unless they be first heard and defeated in a proper action.

Ownership and other real rights in real estate prescribe by possession for six years with respect both to persons present and absent, in good faith and with a proper title according to the provisions of Judicial Order of April 4, 1899, which is applicable to the case at bar; all of which requisites are present in the case of Alfonso del Rio, since in taking into consideration the prior acquisition, Román Montano acquired the 61 *cuerdas* of land by purchase under a public deed executed October 16, 1891, the possessory title to which land Montano already had recorded in the registry of property since October 11, 1888. Montano's possession, as well as that of Alonso, has been in good faith, which is always presumed in the absence of proof to the contrary. And finally, since the recordation of the possessory title in the registry in favor of Montano, and which possession necessarily favors his predecessor in interest, Alonso del Rio, up to the time when Emilio Torres delivered the 61 *cuerdas* to José Esteves Torres, a much longer period of time than six years has elapsed, which is the time required for prescription by the Judicial Order above cited, and it cannot be alleged against Alonso del Rio that Emilio Torres was in possession for a long time, as that possesssion prejudices the interests of José Esteves Torres, whereas neither he nor his predecessors in interest made any effort to interrupt the same, and it favors Alonso del Rio, in whose favor Montano executed a deed of sale on October 16, 1891, because Emilio Torres himself agreed to it, as appears from the evidence introduced at the trial.

Furthermore, José Esteves Torres has not proved his

ownership of the whole tract of 61 *cuerdas* of land to which a possessory title is held by Alonso del Rio, as the instruments the validity of which he alleges in support of his complaint refer to the undivided co-ownership acquired by the successive conveyances made by several of the heirs of Antonio Abad Colón in the 53 *cuerdas* of land which was at one time the property of Victoriano Muñiz. And no partition or award having been made of the property of the said Colón, the heirs, and therefore, José Esteves Torres, their successor in interest, are without a title of ownership to each and every one of the 61 *cuerdas* of land, according to the provisions of article 1068 of the Civil Code.

Acts of possession performed or consented to by the person in possession of a thing, which does not belong to him, as a mere tenant to enjoy or retain it in whatever capacity, do not bind or prejudice the owner, unless he has expressly empowered him to perform such acts, or ratifies the same after they have been performed. For these reasons, in accordance with the legal provision contained in article 463 of the Civil Code, Alonso del Rio being as he was, in possession in the capacity of owner, of the 61 *cuerdas* of land, with a title recorded in the registry of property, acts performed by Emilio Torres who was a mere tenant thereof, he having complied with the demand to vacate made in the name of José Esteves Torres, and consenting thereto, are not binding upon Alonso del Rio who should be reinstated in the possession of the land, in accordance with the provisions of article 446 of the Code above mentioned.

In view of the foregoing facts, we cannot hold the proceedings, contracts and records to be null and void, as prayed for in the complaint.

After reviewing the authorities cited, and other articles of the Civil Code and the Mortgage Law which are applicable to the case, we adjudge that we should affirm and do affirm the judgment appealed from, and which was rendered by the Dis-

trict Court of Arecibo on January 17th, last, and tax the costs of the appeal against the appellant, José Esteves Torres. The record herein is ordered to be returned to the said court, together with the proper certificate.

Chief Justice Quiñones and Justices Figueras and Mac-Leary concurred.

Mr. Justice Sulzbacher did not sit at the hearing in this case.